## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RONALD PAIRAN,
    Plaintiff,

vs.

GUARDIAN PROTECTION SERVICES
OF OHIO, LLC, et al.,
    Defendants.

Civil Action No. 1:20-cv-17
Dlott, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff Ronald Pairan filed this action on January 7, 2020 against defendant Guardian

Protection Services of Ohio, LLC, a subsidiary of Guardian Protection Services, Inc. (hereafter

referred to as "Guardian" or "defendant").[1]  Plaintiff seeks overtime and minimum wage

compensation under the Fair Labor Standards Act (FLSA) and the Ohio Fair Wage Standards

Act (OFWSA).  This matter is before the Court on defendant's motion to dismiss the complaint

pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (Doc. 9), plaintiff's response in

opposition (Doc. 12), defendant's reply memorandum (Doc. 15), and plaintiff's sur-reply

memorandum (Doc. 18).

### I. Factual allegations

Plaintiff makes the following allegations in the amended complaint (Doc. 4):  Defendant

Guardian hired plaintiff as a technician in April 2000.  *Id*. at ¶ 16.  Plaintiff was assigned an

employee identification number, which he used whenever he interacted with defendant's various

offices and the central monitoring station.  *Id*. at ¶¶ 16, 17.  From 2000 until 2010, the first 10

years he worked for defendant, plaintiff worked six days per week as an alarm system technician.

*Id*. at ¶¶ 15, 40.  At the beginning and throughout most of his tenure with Guardian, plaintiff

---

[1] Plaintiff also named a second defendant, who he subsequently dismissed. *See* Doc. 5.

wore a company uniform and was required to affix a company identification badge to it. *Id.* at ¶¶ 24, 41. From 2010 until around August 7, 2015, plaintiff worked five days per week. *Id.* at ¶¶ 40, 41. On August 7, 2015, Guardian told Pairan that his work schedule would be reduced to four days per week and that he still needed to wear a company identification badge but not a company uniform. *Id.* at ¶ 41. From August 7, 2015 until June 29, 2016, plaintiff's work hours were reduced to four days per week. *Id.* at ¶¶ 41, 43. Until June 29, 2016, plaintiff and similarly situated colleagues "regularly worked in excess of forty hours per week, including evenings and weekends." *Id.* at ¶ 130. On June 29, 2016, plaintiff was informed by Operations Manager Shane McVey that "Guardian had hired a compliance officer who told the company it could not classify him, or others similarly situated, as independent contractors while also working them four or five days per week." *Id.* at ¶ 42. Guardian reduced plaintiff and his colleagues' work schedules to three days per week. *Id.* at ¶ 43. Guardian required plaintiff and his colleagues to purchase a fire license and two different types of insurance coverage. *Id.* When plaintiff objected to his reduced schedule of three days per week, McVey told plaintiff that Guardian would schedule him to work five days per week if plaintiff and his brother started a business because Guardian would then be making payments to a business instead of an individual. *Id.* at ¶ 44.

After plaintiff's schedule was reduced in June 2016, all other work requirements and obligations, other than the new licensing and insurance requirements, remained the same. *Id.* at ¶ 43. Training manuals distributed to plaintiff and similarly situated colleagues from 2000 to 2018 differed only insofar as the newer manuals contained information on new equipment and services. *Id.* at ¶ 50. The training manuals continued to welcome plaintiff and his colleagues to the "Guardian family" and referred to them as "the face of the company." *Id.* at ¶ 57. The only

distinctions between technicians Guardian classified as employees and plaintiff were (1) plaintiff was permitted to leave following completion of daily assignments, whereas employees were assigned additional job sites; and (2) employee payroll records showed a one-hour lunch break regardless of whether the employee had taken a break. *Id.* at ¶ 59.

During his tenure with defendant, plaintiff attended upwards of 25 mandatory, unpaid training sessions. *Id.* at ¶¶ 18, 19. Plaintiff served as an on-the-job training instructor for new hires, who were not permitted to work on their own until plaintiff cleared them. *Id.* at ¶ 20. Guardian paid plaintiff weekly via check from plaintiff's parent corporation. *Id.* at ¶ 32.

Guardian terminated plaintiff in December of 2018. *Id.* at ¶ 1. When he was terminated, plaintiff was told that Guardian had a new president who did not want independent contractors to come "face-to-face" with customers. *Id.* at ¶ 48. At no time during plaintiff's tenure with Guardian did plaintiff own or operate an independent business. *Id.* at ¶ 25. At no time did plaintiff solicit or obtain assignments through any company or corporation other than Guardian. *Id.* at ¶ 36. Plaintiff was never permitted to set or negotiate his share of the profits from the products or services he sold during the time he worked for defendant. *Id.* at ¶ 38. Work was unilaterally assigned by Guardian, and plaintiff was never in competition with other technicians or independent contractors for his assignments. *Id.* at ¶ 53.

Based on these allegations, plaintiff brings claims for "Failure to Pay Overtime" under the FLSA, 29 U.S.C. § 201 *et seq.* (*Id.* at ¶¶ 127-35, Count IV) and the OFWSA, Ohio Rev. Code § 4111.01 *et seq.* (*Id.* at ¶¶ 136, 137, Count V). Plaintiff alleges that at no point in time was he an independent contractor, but rather he was an employee of Guardian entitled to overtime pay and other statutory protections. *Id.* at ¶¶ 60, 62.

Plaintiff also brings a claim for violation of 29 C.F.R. § 516.4, alleging that Guardian failed to post and keep posted in conspicuous places a notice explaining his rights under the FLSA. Doc. 4 at ¶¶ 87-90, Count I. Plaintiff alleges that Guardian thereby kept him and similarly situated colleagues from discovering their legal claims against Guardian and from filing a complaint within the FLSA's two-year limitations period. *Id.* at ¶ 90. Plaintiff also brings a claim for "Willful Misclassification" under the FLSA, alleging that Guardian violated 29 U.S.C. § 201 *et seq.* by willfully misclassifying plaintiff and similarly situated colleagues as independent contractors rather than employees. *Id.* at ¶¶ 103-26, Count III. In addition, plaintiff brings a claim for "Equitable Tolling," alleging that application of the equitable tolling doctrine would be appropriate in this case as it would advance the interest of justice. *Id.* at ¶¶ 91-102, Count II. Plaintiff alleges he did not learn about, and he had no constructive knowledge of, the FLSA and other violations until he hired legal counsel on January 20, 2019 in connection with the termination of his employment. *Id.* at ¶ 68. Plaintiff alleges that defendant continued to employ and misclassify plaintiff only long enough after June 2016 to run out the FLSA's two-year statute of limitations. *Id.* at ¶¶ 65, 67. Finally, plaintiff brings a claim for "Theft and Fraud" under Ohio Rev. Code § 2913.01 *et seq. Id.* at ¶¶ 138-40, Count VI.

**II. Rule 12(b)(6) standard**

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.*

4

(quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that his plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570).  A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.  Overtime compensation claims (Counts IV, V)

### A.  Statute of limitations/equitable tolling

Defendant moves to dismiss plaintiff's claims for violations of the FLSA and OFWSA overtime compensation provisions alleged in Counts IV and V of the amended complaint on the ground the claims are time-barred.  Doc. 9, PageID #902.  Plaintiff concedes that the statute of limitations had run on these claims before he filed this lawsuit.  Doc. 12, PageID #920.  Plaintiff nonetheless argues that he should not be barred from pursuing the claims because application of the equitable tolling doctrine is appropriate.  *Id.*  Defendant argues that the equitable tolling doctrine should not be applied to plaintiff's overtime compensation claims.  Doc. 9, PageID #907-09.  Defendant maintains that none of the factors to be considered in applying the equitable tolling doctrine weigh in favor of tolling the statute of limitations.  Doc. 15, PageID #933.

The statute of limitations on a failure to pay overtime claim under the FLSA is two years.  29 U.S.C. § 255(a).  *See also Terry v. Pro-Mark Contracting, LLC*, No. 1:14cv2542, 2016 WL 3421399, at *5 (N.D. Ohio June 22, 2016) ("An action for unpaid overtime compensation under the [FLSA] must be commenced within two years after the cause of action accrued.").  For willful violations, the statute of limitations is three years.  29 U.S.C. § 255(a); *Terry*, 2016 WL

3421399, at *5. The statute of limitations for overtime wage claims under the OFWSA is two years, with no exception for willful violations. Ohio Rev. Code § 2305.11 ("[A]n action by an employee for the payment of . . . unpaid overtime compensation, or liquidated damages by reason of the nonpayment of . . . overtime compensation, shall be brought within two years after the cause thereof accrued."). *See also Terry,* 2016 WL 3421399, at *5 (citing *State ex rel. Gingrich v. Fairfield City Sch. Dist. Bd. of Educ.*, 480 N.E.2d 485, 486 (Ohio 1985) (citing Ohio Rev. Code § 2305.11).

Because "each paycheck that fails to include wages for overtime constitutes a separate violation . . . , a new cause of action accrues with the receipt of each paycheck." 29 U.S.C. § 255(a). *See Brittmon v. Upreach, LLC,* 285 F. Supp. 3d 1033, 1045 (S.D. Ohio 2018) (citing *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.,* 246 F. Supp. 2d 886, 902 (S.D. Ohio 2003) (citing *Archer v. Sullivan Cty.,* 129 F.3d 1263 (Table), 1997 WL 720406, at *2 (6th Cir. 1997)).

Plaintiff makes inconsistent allegations as to when the statute of limitations began to run on his overtime compensation claims. In the amended complaint, plaintiff alleges that until around "June 29, 2016, Plaintiff Pairan, as well as putative class members, regularly worked in excess of forty hours per week, including evenings and weekends." Doc. 4 at ¶ 130.[2] Plaintiff alleges in his response to the motion to dismiss that his termination in December 2018 occurred "just over two years after his last workweek of over 40 hours. . . ." Doc. 12, PageID # 920. But in his sur-reply to the motion to dismiss, plaintiff indicates that while putative class members regularly worked more than 40 hours per week until the end of June 2016, plaintiff himself did

---

[2] Plaintiff attached an exhibit to the amended complaint which documents overtime hours that plaintiff worked up until July 1, 2015. Doc. 4, Exh. C.

not. Doc. 18, PageID #954. Rather, plaintiff asserts in his brief that he last worked in excess of 40 hours per week on July 1, 2015, and he "does not claim damages after July 1, 2015." *Id.*, citing Doc. 1-2, PageID #443.[3] Plaintiff alleges: "Based on information and belief, . . . putative class members worked in excess of 40 hours per week until June 29, 2016," citing Doc. 1 at ¶ 129, "but Plaintiff claims damages last accrued July 1, 2015." Doc. 18, PageID #954. For purposes of the motion to dismiss plaintiff's overtime compensation claims, the Court accepts plaintiff's clarification of the date the last overtime compensation violation allegedly occurred and the statute of limitations began to run on his claims. According to plaintiff's allegations and by his calculations, the two-year period for his overtime pay violations lapsed on July 1, 2017, and the three-year limitations period for willful FLSA violations expired on July 1, 2018. *Id.*, PageID #953-54.

The equitable tolling doctrine allows for the statute of limitations to be tolled when the plaintiff lacks knowledge of the limitations period on justifiable grounds or defendant has committed some act of malfeasance or deception. *Wright v. State of Tenn.*, 628 F.2d 949, 952 (6th Cir. 1980). The litigant bears the burden of establishing it is appropriate to apply the equitable tolling doctrine. *Jackson v. United States*, 751 F.3d 712, 718-19 (6th Cir. 2014). To carry his burden, the plaintiff must demonstrate more than just "a garden variety claim of excusable neglect." *Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017) (quoting *Chomic v. United States*, 377 F.3d 607, 615 (6th Cir. 2004)).

Equitable tolling is applied sparingly. *Zappone*, 870 F.3d at 556 (citing *Jackson*, 751 F.3d at 718). Whether to apply equitable tolling in a given case "lies solely within the discretion

---

[3] For reasons that are not clear, plaintiff cites the original complaint in support of the allegations in his sur-reply even though the amended complaint "supersedes the original complaint and is the 'legally operative complaint' in this matter." *Scuba v. Wilkinson*, No. 1:06cv160, 2006 WL 2794939, at *2 (S.D. Ohio Sept. 27, 2006) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)).

of the trial court." *Betts v. C. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072, 1075 (S.D. Ohio 2019) (citing *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). Courts in the Sixth Circuit consider five factors to determine whether the equitable tolling doctrine should be applied. *Zappone,* 870 F.3d at 556 (citing *Jackson*, 751 F.3d at 718) (citing *Truitt*, 148 F.3d at 648). The factors are: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Truitt*, 148 F.3d at 648. These factors are considered on a case-by-case basis. *Id.* They are not necessarily comprehensive, and the court may consider additional factors. *Betts*, 351 F. Supp. 3d at 1075 (citing *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004)). *See also Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560-61 (6th Cir. 2000) (citing *Truitt*, 148 F.3d at 648). Often "the most significant consideration in courts' analyses" will be the plaintiff's "'failure to meet a legally-mandated deadline' due to 'unavoidab[le] . . . circumstances beyond'" the plaintiff's control, not any one of the five *Truitt* factors. *Zappone,* 870 F.3d at 556 (quoting *Graham-Humphreys*, 209 F.3d at 560-61) (citations omitted)).

**B. The statute of limitations should not be equitably tolled**

Accepting the allegations of the complaint as true, plaintiff has not shown that the statute of limitations should be equitably tolled for his overtime compensation claims. The relevant factors weigh against application of the equitable tolling doctrine.

*1. Lack of notice of the filing requirement/failure to post notice*

Defendant does not directly address the first *Truitt* factor - lack of notice of the filing requirement - in its motion to dismiss. Doc. 9. Defendant discusses only the relevance of its

alleged failure to post an FLSA-required notice (*Id.*, PageID #909), which plaintiff claims caused him to remain unaware of any overtime compensation claims he might have under the FLSA. *See* Doc. 4 at ¶¶ 95-97; Doc. 12, PageID #921.  Defendant argues that its alleged failure to post the FLSA-required notice is insufficient to warrant equitable tolling in this case.  Doc. 9, PageID #909.  To support its position, defendant cites *Claeys v. Galdalf, Ltd.*, 303 F. Supp. 2d 890, 896 (S.D. Ohio 2004).  The Court in *Claeys* found that "an employer's failure to post the FLSA-required notice does not necessarily toll the statute of limitations on the plaintiff's claim for overtime pay," and the Court concluded that invocation of the equitable tolling doctrine was not justified in that case.  *Id.* (citing *Archer*, 1997 WL 720406, at *4).  *See also* Doc. 15, PageID #934.

Plaintiff responds that courts are not required to apply equitable tolling when employers have failed to post FLSA-required notices; however, the court may consider an employer's failure to do so when deciding whether the statute of limitations should be equitably tolled.  Doc. 12, PageID #922; *see Claeys*, 303 F. Supp. 2d at 896 (citing *Archer*, 1997 WL 720406 at *4).  Plaintiff claims that he lacked actual notice of the filing requirement due to defendant's alleged failure "to post FLSA-required notice of plaintiff's rights so that he remained unaware of any claims he might have." *Id.*, PageID #922.  Plaintiff argues that *Claeys* is distinguishable from this case because the employer in *Claeys* affirmatively refused to pay overtime wages to employees who demanded it.  *Id.*, PageID #921, 922.  Plaintiff claims that in contrast, defendant's failure to post notices was part of an alleged "pattern and practice of unlawful misconduct" that involved a "deceptive misclassification" of employees like plaintiff, who did not know they were entitled to overtime pay.  *Id.*  Plaintiff argues that given this distinction, the actual notice factor weighs in favor of applying equitable tolling in this case.  *Id.*

Defendant acknowledges that for purposes of its motion to dismiss, the Court must accept as true plaintiff's allegation that it did not post the FLSA-required notice. Doc. 9, PageID #897, n.2; Doc. 15, PageID #934. It is reasonable to infer from defendant's alleged failure to post the FLSA-required notice, and the absence of allegations or facts to show that plaintiff was notified of the filing requirement in some other manner, that plaintiff lacked actual notice of the filing requirement. *See* Doc. 4 at ¶¶ 95-97; Doc. 12, PageID #921. In such a case, *Claeys* neither requires nor precludes the Court from applying equitable tolling. 303 F. Supp. 2d at 896. Rather, defendant's purported failure to post the FLSA-required notice, and the consequent lack of notice of the filing requirement alleged by plaintiff, is one factor to be considered in conjunction with the other relevant *Truitt* factors to determine whether equitable tolling is appropriate. *See Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir. 1991) (citations omitted) (the plaintiff may have lacked actual notice of the defendant's violation of the FLSA and of the filing deadline, but it is "well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling").

The first *Truitt* factor weighs in favor of applying the equitable tolling doctrine.

### 2. *Lack of constructive knowledge of the filing requirement*

Defendant argues that the statute of limitations should not be equitably tolled because plaintiff had constructive knowledge of the alleged overtime pay violations as early as June 29, 2016. Defendant asserts this is the date that Operations Manager McVey allegedly informed plaintiff that the company had hired a compliance officer and had learned it could no longer schedule independent contractors to work four or five days per week; plaintiff's schedule was immediately reduced from five to three days per week; and plaintiff was required to obtain a license and two different types of insurance. Doc. 15, PageID #937. Defendant maintains that if

plaintiff's allegations are accepted as true, then defendant did inform plaintiff of his employment classification and did not attempt to actively deceive plaintiff as to his rights. *Id.,* PageID #935. Defendant contends that a reasonably diligent person would have taken affirmative steps to educate himself about his rights following McVey's comments on June 29, 2016. *Id.,* PageID #935-938.

Plaintiff argues that the statute of limitations should be equitably tolled because he was misled and had no reason to know he had potential claims. Doc. 12, PageID# 924. Plaintiff acknowledges that McVey informed him on June 29, 2016 that the company "could not classify him, or others similarly situated, as independent contractors while also working them four or five days a week." *See Id.*; Doc. 4 at ¶ 42. Plaintiff alleges that defendant nonetheless prevented him from learning about his claims by keeping him employed until after the two-year limitations period had expired. *Id.*; Doc. 4 at ¶ 67.

The allegations of the amended complaint, accepted as true, show that plaintiff had constructive knowledge of the alleged overtime compensation violations as early as June 29, 2016. According to plaintiff, this was the date McVey made comments to plaintiff about the need to reduce plaintiff and his colleagues' hours because defendant could not otherwise classify them as independent contractors. Doc. 4 at ¶¶ 42-43. Plaintiff knew or should have known as of July 29, 2016 that defendant may have misclassified his employment status and that defendant had not been paying him overtime compensation. Plaintiff therefore knew or should have known of the facts giving rise to his overtime compensation claims as early as June 29, 2016.

Plaintiff had reason to inquire into his rights when McVey informed plaintiff that and he and his co-workers could not be classified as independent contractors if they continued to work four or five days per week. Plaintiff has not alleged any facts to show that defendant

11

affirmatively misled him about the facts underlying his overtime compensation claims after that point. Plaintiff argues that "defendant misled plaintiff into believing he was an independent contractor." Doc. 12, PageID #924. Plaintiff alleges he was misled because he continued to work for Guardian after his conversation with McVey. However, his continued work for Guardian should not have deterred him from inquiring into his correct work classification and status. To the contrary, the fact that plaintiff's schedule was reduced and he was required to comply with new insurance and licensure requirements, considered in light of McVey's comments relaying a compliance officer's guidance on the limited number of hours independent contractors could work, should have prompted plaintiff to question whether he had been improperly classified as an independent contractor and denied overtime pay. Defendant's continued retention of plaintiff should not have "lulled him into" failing to inquire into his rights during the statutory filing period. *Cf. Gray v. Allstate Ins. Co.*, No. 1:03-cv-910, 2005 WL 2372845, at *5 (S.D. Ohio Sept. 26, 2005) (Any argument by plaintiff that the defendant "lulled him into inactivity during the statutory filing period" by informing the plaintiff in an earlier letter than he would be terminated no later than March 2008, but that the defendant would try to find the plaintiff another position, "is undermined to the point of nullity by the fact that Plaintiff learned no later than March 8, 2002, that Defendant would not continue to employ him after that date.").

Plaintiff also vaguely alleges that "[he] did not know he had any claims to pursue, until after the time to bring them had passed, because it never occurred to plaintiff that a company would treat him this way." Doc. 12, PageID #924. But plaintiff's subjective belief as to how defendant should have treated him should not have misled plaintiff or deterred him from learning

about his claims. Plaintiff's factual allegations show that he had constructive knowledge of his overtime compensation claims well before the statute of limitations expired.

Plaintiff has not alleged facts which, when accepted as true, support a finding that defendant deterred or prevented him from learning of his claims during the statutory limitations period.

The lack of constructive notice factor weighs in defendant's favor.

### 3. *Diligence in pursuing one's rights*

Defendant contends that plaintiff did not diligently pursue his rights. Defendant argues that the statute of limitations began to run on June 29, 2016, because plaintiff never worked more than 40 hours per week after that date. Doc. 9, PageID #898, citing Doc. 4 at ¶ 43. Defendant contends that plaintiff became aware of the overtime compensation violations on June 29, 2016 via McVey's statements. *Id*., PageID #906, citing Doc. 4 at ¶ 42. Yet, defendant notes that plaintiff waited well over three years from that date, and one year after he retained counsel in January 2019, to file this action even though he had ample time to do so before the statute of limitations expired on June 29, 2019. *Id.*

Plaintiff argues that he diligently pursued his rights. Plaintiff maintains that he was not aware he had a cause of action for overtime pay violations until after he was terminated in December 2018. Doc. 12, PageID #921. Plaintiff indicates that he delayed filing suit until after his termination while he and defendant engaged in settlement discussions for seven months. *Id.* Plaintiff alleges that even though he hired counsel and became aware of the alleged violations in January 2019, the statute of limitations for his overtime pay violations lapsed on July 1, 2017, and the three-year limitations period for willful FLSA violations expired on July 1, 2018. Doc. 18, PageID #953-54.

13

Accepting plaintiff's allegations as true, the two-year statute of limitations for his overtime wage violations expired on July 1, 2017, and the three-year statute of limitations for willful FLSA violations expired on July 1, 2018. 29 U.S.C. § 255(a); *Brittmon,* 285 F. Supp. 3d at 1045. Plaintiff has not alleged any facts to show that he diligently pursued his rights before the statute of limitations ran on his claims. Plaintiff has not explained why he did not inquire into his rights under the FLSA and OFWSA after McVey made his comments on June 29, 2016 and plaintiff's work schedule was reduced. As discussed *supra,* McVey's comments should have alerted plaintiff to the possibility that defendant had misclassified him and had not paid him overtime compensation. At the very least, McVey's comments should have prompted plaintiff to make inquiries into whether defendant had misclassified him. Plaintiff made no attempt to learn in June 2016 or during the statutory period whether defendant had misclassified him and failed to pay him overtime wages. *Cf. Awad v. Tyson Food, Inc.*, No. 15-00130, 2016 WL 454776, at *4 (M.D. Tenn. Feb. 5, 2016) (Arabic-speaking employees were not diligent when they received correspondence from employer that notified them of FLSA violations in English, which they allegedly did not understand, but failed to seek an explanation). *See also Gray*, 2005 WL 2372845, at *5 (the plaintiff "unreasonably remained ignorant of, or chose not to comply with," statutory filing requirement "even though he had contacted an attorney during that time period about his legal rights with respect to the termination of his employment.").

The lack of reasonable diligence factor weighs heavily in defendant's favor.

### 4. *Absence of prejudice to defendant*

Defendant maintains that it should not be expected to defend against claims extending back six years, especially if the case could potentially become a class action. Doc. 15, PageID #940. Defendant points out that the United States Department of Labor requires an employer to

14

maintain pay records for only three years, and the need to recreate payroll records extending further back than this would constitute an "extreme burden." *Id.* at n.5.

Plaintiff contends that the prejudice to defendant from equitably tolling the statute of limitations does not weigh against applying the equitable tolling doctrine. Plaintiff argues that recreating six years of payroll records may be burdensome, but the burden is not enough alone to bar equitable tolling. Doc. 18, PageID #955. Plaintiff acknowledges defendant's larger concern that it may have to recreate the payroll records for an entire class if plaintiff's putative class is certified. *Id.* However, plaintiff asserts that defendant's burden of analyzing the documents would be lessened in that event because the parties would share the burden. *Id.*

Defendant has identified prejudice caused by plaintiff's delay. Plaintiff does not deny that defendant would be prejudiced by his delay in filing suit if this case were to proceed because defendant would have to recreate payroll records it was not required to retain. Plaintiff has not cited any authority or provided any justification to show why the additional prejudice caused by his delay should not be factored into the equitable tolling decision.

The prejudice factor weighs against equitably tolling the statute of limitations.

### 5. *Reasonableness in remaining ignorant of the particular legal requirement*

Defendant argues that "ignorance of the law is not sufficient to warrant equitable tolling." Doc. 9, PageID #906, citing *Rose*, 945 F.2d at 1335. Further, defendant argues that it was not reasonable for plaintiff to remain ignorant of the alleged overtime wage violations until after the statute of limitations had run. Doc 15, PageID #941. Defendant asserts that plaintiff had constructive notice of a potential violation when he was informed on June 29, 2016 that his schedule and work requirements were being changed. *Id.* Additionally, defendant argues that plaintiff has provided no factual or legal arguments to support his allegation that he remained

ignorant of the alleged violations due to deception or deterrence by defendant. *Id.* Defendant

contends there are no facts that could explain reasonable ignorance of the violations and the

statute of limitations on plaintiff's part. *Id.*

Plaintiff argues that it was reasonable for him to remain ignorant of the filing

requirement. Plaintiff maintains that he was deceived by defendant and therefore had no

constructive or actual knowledge of the violations or his rights. Doc. 12, PageID #923. Plaintiff

argues that in FLSA cases where a defendant's wrongful conduct prevented a plaintiff from

asserting his claims, courts have equitably tolled statutes of limitations in the interest of justice.

*Id.*, PageID # 925, citing *Cruz v. Maypa*, 773 F.3d 138, 146 (4th Cir. 2014); *Partlow v. Jewish*

*Orphans' Home of S. California, Inc.*, 645 F.2d 757, 760-61 (9th Cir. 1981), *abrogated on other*

*gds. by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Plaintiff also argues that "a

reasonable person does not pursue legal claims against his then-current employer because of

mere 'job modifications.'" *Id.,* PageID #922. Plaintiff acknowledges that ignorance alone is not

sufficient to toll the statutory period, but he claims that defendant actually deterred him from

retaining legal counsel or inquiring as to his rights by continuing his "employment." Doc. 12,

PageID #923-24.

It was not reasonable for plaintiff to remain ignorant of the alleged overtime

compensation violations until after the statute of limitations had expired. Plaintiff had

constructive knowledge of the alleged violations as early as June 29, 2016, when Operations

Manager McVey made comments that should have alerted plaintiff to the possibility that he had

been misclassified as an independent contractor. Doc. 4 at ¶ 42. Plaintiff should have inquired

about his rights at that time. Plaintiff's factual allegations do not support a finding that

defendant deterred or prevented plaintiff from learning about his rights under the FLSA or

16

OFWSA. Plaintiff alleges, and it is accepted as true, that defendant did not post an FLSA-required notice. *Id.* at ¶ 66. But defendant's omission does not, in and of itself, compel a finding that plaintiff did not know about his rights. *See Claeys*, 303 F. Supp. 2d at 896. *See also Rose,* 945 F.2d at 1335 (citations omitted) (the plaintiff may have lacked actual notice of the defendant's violation of the FLSA and of the filing deadline, but it is "well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling").

Plaintiff also alleges that defendant misled and deterred him from pursuing his rights by continuing to "employ" him. Doc. 4 at ¶¶ 65, 67-68. But continued "employment" is not enough to mislead plaintiff about his rights and "lull" him into inaction. *Cf. Gray*, 2005 WL 2372845, *4 (holding that the possibility of continued employment within the company could not toll the statute of limitations). Plaintiff had constructive knowledge of the alleged overtime pay violations before the statute of limitations expired, and there are no factual allegations showing that defendant took action to prevent or deter plaintiff from learning about his right to sue defendant for those violations.

The fifth factor weighs heavily in favor of defendant.

### C. Conclusion

There is no dispute that plaintiff filed his FLSA and OFWSA overtime compensation claims alleged in Counts IV and V after the statute of limitations had expired. Those claims are therefore time-barred. Plaintiff has not carried his burden to show that the statute of limitations on these claims should be equitably tolled. While plaintiff did not have actual notice of the filing requirement, the remaining factors weigh against equitable tolling. Essentially, like the plaintiff in *Rose*, plaintiff Pairan's arguments for equitably tolling the statute of limitations "boil down to the fact that he did not know about his statutory rights until he saw an attorney after the

expiration of the limitations period." *Rose*, 945 F.2d at 1336. "Absent a showing that he was somehow deterred from seeking legal advice by his employer, this is simply not enough to warrant equitable tolling." *Id*. Plaintiff has not alleged any circumstances to show that defendant deceived him or otherwise prevented him from filing his FLSA and OFWSA overtime compensation claims in a timely manner.

Plaintiff argues in closing that he cited several cases in his amended complaint that stand for general rules or propositions that are applicable to this case, which defendant challenged in its motion to dismiss as "inapposite, unpersuasive, and[/]or not binding on this Court." Doc. 12, PageID #926. Plaintiff alleges that the Sixth Circuit has not heard a case with facts similar to the facts alleged here, so that this is "a case of first impression." Doc. 12, PageID #926. Plaintiff asserts that the equitable tolling doctrine requires the Court to consider the relevant factors on a case-by-case basis, and his complaint should not be dismissed for lack of a binding Sixth Circuit decision that is on point. *Id*., #925-926. The Court agrees and has not concluded that plaintiff's complaint should be dismissed for this reason. Rather, in accordance with Sixth Circuit precedent, the Court has applied the *Truitt* factors to the particular facts alleged in this case to determine whether equitable tolling is appropriate. *See Truitt*, 148 F.3d at 648. Based on the facts alleged here, the Court finds that equitable tolling of the statute of limitations on plaintiff's overtime compensation claims is not warranted. These claims should be dismissed.

### IV. Remaining FLSA claims (Counts I, II, III)

Plaintiff brings separate claims in the amended complaint for "Failure to Post a Notice Explaining FLSA" (¶¶ 84-90, Count I); "Equitable Tolling" (¶¶ 91-102, Count II); and "Willful Misclassification [FLSA]" (¶¶ 103-126, Count III). Defendant alleges that Counts I, II, and III do not present legally cognizable claims and/or claims that create a private cause of action. Doc.

18

9, PageID #900-902. Plaintiff does not dispute that Counts I, II, and III do not present independent causes of action. Doc. 12, PageID #918-19. These claims should therefore be dismissed for failure to state a claim for relief.

### V. State law claim for "Theft and Fraud" (Count VI)

Plaintiff brings a claim for "Theft and Fraud" under Ohio Rev. Code § 2913.01, an Ohio criminal statute. Doc. 4, Count VI. Plaintiff does not dispute that § 2913.01 is a criminal statute that does not provide a private cause of action. Doc. 12, PageID #926. This claim should be dismissed.

### IT IS THEREFORE RECOMMENDED THAT:

Defendant's motion to dismiss (Doc. 9) be **GRANTED** and plaintiff's claims be **DISMISSED**.

Date: 7/13/2020

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RONALD PAIRAN,                                    Civil Action No. 1:20-cv-17
    Plaintiff,                               Dlott, J.
                                                   Litkovitz, M.J.

    vs.

GUARDIAN PROTECTION SERVICES
OF OHIO, LLC, et al.,
    Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).